Doherty v. Western United Gas & Electric Co., 188 Ill. App. 494.

---

## Lawrence Doherty, Appellee, v. Western United Gas & Electric Company, Appellant.

### Gen. No. 19,887.

1. MASTER AND SERVANT, § 98*—*what not a "workshop" within meaning of Factory Act.* A pit or manhole in a street constructed and used by a gas company and located about two miles from its gas plant, *held* not to be a "workshop" within the meaning of section 12 of the Factory Act of 1909, J. & A. ¶ 5397, providing that workshops shall be kept free from gas, etc., it appearing that a gas main passed through the pit, that in the pit there were two valves on the gas main, a governor controlling the pressure of gas and indicators to register the pressure, and that the gas which passed through the main was the finished product.

2. EVIDENCE, § 399*—*when opinion of expert improper as being on an ultimate fact.* In an action by an employee to recover for personal injuries caused by inhaling gas which it was alleged defendant allowed to escape in a manhole, permitting an expert witness in answer to a hypothetical question to, in effect, give his opinion that plaintiff's unconsciousness was caused by inhaling

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the gas, *held* error for the reason that it, in effect, allowed him to give his opinion as to an ultimate fact, which was a question for the jury, it appearing that defendant pleaded the general issue to plaintiff's declaration and at the trial made no admission of plaintiff's injury, but denied that plaintiff inhaled gas at the manhole.

Appeal from the Circuit Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed October 6, 1914. Rehearing denied October 17, 1914.

**Statement by the Court.** This is an appeal from a judgment for $7,500 rendered by the Circuit Court of Cook county in favor of Lawrence Doherty, plaintiff, in an action for damages for personal injuries.

The defendant corporation was in the business of manufacturing and selling illuminating gas. At the intersection of Brainard and Ogden avenues in La Grange, Illinois, and about two miles from its manufacturing plant, defendant maintained and operated a governor pit, or manhole, in the street, five feet deep and five feet square. Running through this pit, or underground compartment, was a gas main, on which were two valves and a governor which controlled the gas pressure, and in the pit were two indicators which registered the gas pressure on charts. The walls of the pit were made of brick covered with cement and the roof and floor were of concrete. The opening into the pit was about two feet square, covered with a heavy, unperforated, iron manhole cover.

Plaintiff on the day of the accident, June 15, 1910, was nearly nineteen years of age, and had been employed by defendant for about three years. For the first two years he called at houses and read gas meters. For more than a year prior to the accident he worked as a gas fitter, repairing leaks and attending to "trouble tickets," and during this time it was his

duty to go down into said governor pit every morning and evening and regulate the gas pressure, change certain charts and ink the pens used to record the pressure of the gas. He was the only employee of defendant who went there regularly.

Plaintiff testified that about 5:30 A. M., on the day mentioned, he rode to the pit on his bicycle, lifted off the manhole cover, noticed the odor of illuminating gas coming from the pit, waited about two minutes "to ventilate the place" as he always did, and then went into the pit to attend to his duties; that after being there about three minutes he felt "a singing in the ears and getting weak in the knees" and he came out, staggered a little, walked to the curb and in the park for a few minutes, and then returned and put back the heavy manhole cover; that then he walked for a short distance leading his bicycle, then mounted the bicycle and rode to the Stone avenue railroad station some distance away; that upon arriving at the station he felt nauseated and sat down upon a bench; that then he delivered a newspaper at a house about three hundred feet away, as was his custom every morning, and then returned to the station and again sat down because his sickness kept increasing; that then he started for home, walked a few steps, fell, and that was the last he remembered until several days thereafter. He was found by John McKay, a newsboy, and Walter McGarry, lying at the foot of a flight of concrete steps, running into the basement of the station, down which he had apparently fallen. He was picked up insensible and taken to his home, where an examination revealed a contusion on his head and bruises on his body. He remained in an unconscious state for three days, succeeded by severe convulsions which gradually subsided. In about three weeks he was able to leave the house and he took a lake trip at his physician's suggestion. He returned to work

for defendant some time in August, 1910, and continued in its employ until about February 1, 1911, when he went to work for the Pullman Company. In the fall of 1912 he entered the University of Illinois, and continued his studies there until the time of the trial.

Plaintiff's witness, John McKay, the newsboy, testified to the effect that each morning he was accustomed to "run a race" with the plaintiff to see which one would deliver a newspaper and return to the station first, and that shortly before the witness found plaintiff lying at the foot of said steps on the morning mentioned he had run his usual race with plaintiff. Plaintiff's witness, Walter McGarry, testified that at the time he assisted in picking up plaintiff from the foot of said steps there was a "kind of driveling on the mouth, something like frothing." Plaintiff further testified that prior to June 15, 1910, he never had had any fainting or dizzy spells, but that on several different occasions afterwards he had such spells, following violent exercise, and that his elder brother had died of epilepsy in 1905.

The testimony of several of plaintiff's witnesses tended to show that he was not as bright mentally as before the accident, and that he had great difficulty in the control of his speech, while formerly he was ready of speech. One of the medical experts, called by plaintiff, expressed the opinion that plaintiff had a brain injury, that he would probably lose mental power as he grew older and that he might ultimately become insane.

On direct examination plaintiff testified that on the morning mentioned gas was leaking into the pit because one of the valves was not tight. On cross-examination he testified that he did not know that there was a leak at that particular time, but that because he smelled gas he assumed there was a leak; that he knew that gas was dangerous and that if he inhaled enough it would "knock him out."

The theory of plaintiff's case was that his loss of consciousness and fall, his subsequent convulsions, dizzy spells, weakening of mental powers, etc., were the result of his having inhaled illuminating gas, because of the negligence of defendant, during the few minutes he was in the pit on the morning mentioned. Testimony of two medical experts was introduced in support of this theory.

Plaintiff's declaration consisted of eleven counts. Seven counts were based upon the alleged violation of the common-law duty of defendant to furnish plaintiff a safe place to work, and to warn plaintiff. Four counts alleged that the pit or manhole was a "workshop" within the meaning of the act, commonly known as the "Factory Act," and entitled "An Act to provide for the health, safety and comfort of employes of factories, mercantile establishments, mills and workshops in this State, and to provide for the enforcement thereof," approved June 4, 1909, and said counts were based upon the alleged violation of section 12 of that Act. (J. & A. ¶ 5397.) To all counts defendant pleaded the general issue. In section 29 of the Act (Hurd's St. 1909, ch. 48, par. 117, J. & A. ¶ 5414) it is stated:

"The term 'mill or workshop' shall include any premises, room or apartment not being a factory as above defined, wherein any labor is exercised by way of trade or for the purpose of gain in or incidental to any process of making, altering, preparing, cleaning, repairing, ornamenting, finishing or adapting for sale any article or part of any article, and to which or over which building, premises, room or apartment, the employer of the person employed or working therein has the right of access or control; * * *"

Section 12 of the Act (J. & A. ¶ 5397), which it was alleged that defendant had violated, is as follows:

"All factories, mercantile establishments, mills or workshops shall be kept free from any gas or effluvia arising from any sewer, drain, privy or other nuisance on the premises. All poisonous or noxious fumes or

gases arising from any *process*, and all dust of a character injurious to the health of the persons employed, which is *created* in the course of a *manufacturing* process, *within* such factory, mill or workshop, shall be removed, as far as practicable, by either ventilating or exhaust devices.''

Plaintiff's evidence tended to prove that illuminating gas was a poisonous or noxious gas, and that it was practicable to remove such gas from the pit or manhole by means of ventilating or exhaust devices.

The various defenses urged at the trial were, in substance, that there was no gas escaping in the pit on the morning mentioned; that the defendant was not guilty of any negligence; that if plaintiff was injured by inhaling gas in said pit, as alleged, he assumed the risk or was guilty of such contributory negligence as barred a recovery; and that plaintiff's unconsciousness and fall at the railroad station, his subsequent convulsions, dizzy spells, weakening of mental powers, etc., were not the result of any inhalation of gas, as alleged, but of an epileptic fit. There was testimony tending to support these defenses. The defendant further contended at the trial that the pit or manhole was not a ''workshop'' within the meaning of said ''Factory Act,'' and that even if a poisonous or noxious gas was arising on the morning mentioned in said pit or manhole, which was about two miles from defendant's plant, it was not a gas arising from any *process,* or created in the course of a *manufacturing* process *within* such workshop.

At the conclusion of plaintiff's evidence the defendant moved for a directed verdict in its favor, but the motion was denied. The defendant thereupon moved that the court instruct the jury to find the defendant not guilty on each of the four counts based upon said act, but the motions were severally denied. All of these motions were renewed at the close of all the ·evidence and again denied. Among the refused

instructions offered by the defendant was one to the effect that there could be no recovery upon the ground that defendant had failed to comply with said "Factory Act," and another to the effect that the provisions of section 12 of said Act did not apply to the pit or manhole in question. The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at $7,500, upon which verdict the judgment appealed from was entered.

KRAUS, ALSCHULER & HOLDEN and ALSCHULER, PUTNAM & JAMES, for appellant.

ALBERT L. HOPKINS and S. W. GEHR, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Many points are urged by counsel for defendant as reasons for the reversal of the judgment. We shall consider two.

It is contended that the trial court erred in holding, in effect, that plaintiff could recover on each of said four counts based upon the alleged violation by defendant of section 12 of said "Factory Act." After careful consideration, we are of the opinion that the court erred in so holding and in refusing to instruct the jury, on defendant's motion, to find the defendant not guilty on each of said counts. We think that the pit or manhole was not a "workshop" within the meaning of said act. The evidence shows that defendant's manufactured product, i. e., illuminating gas, left its gas plant, which was about two miles from said pit or manhole, as a finished product. Nothing further remained to be done in "making, altering, preparing, cleaning, repairing, ornamenting, finishing or adapting for sale" said product. It appears that in the manhole there were two valves on a gas main, a governor controlling the pressure of the gas, and indicators to register that pressure, and that plaintiff's

duties were to visit the manhole twice a day, turn a valve, change certain charts and ink certain pens. Neither plaintiff nor any one else performed any labor in the manhole upon the product itself. The manhole was a part of defendant's system of distributing its product to its customers. And we think the word "workshop," as used in said act, means the place where the work of making, altering, etc., is done upon the product. In 40 Cyc. 2862, the term "Workshop" is defined as "a shop where any manufacture or handiwork is carried on, whether for the purpose of repair or manufacture. In 7 Words & Phrases, 6494, it is stated that a shop "is understood to be a building in which an artisan carries on his business, or laborers, workmen, or mechanics, by the use of tools or machinery, manufacture, alter or repair articles of trade." In *Spacey* v. *Dowlais Gas and Coke Co.*, 75 L. J. K. B. (N. S.) 5, it was held that a gas main used to supply gas to the consumers was not a part of the company's factory. Furthermore, even if the manhole in question could be construed to be a "workshop" within the meaning of said act, the proof does not disclose that defendant violated the provision of section 12 of the Act, as alleged in said counts. The first clause of that section provides that "all factories, * * * mills or workshops, shall be kept free from any gas or effluvia arising from any sewer, drain, privy or other nuisance on the premises." There was no evidence that any gas arose from any "sewer, drain, privy or other nuisance on the premises." The second clause of the section provides that "all poisonous or noxious fumes or gases arising from any process, * * * which is created in the course of a manufacturing process, within such factory, mill or workshop, shall be removed, as far as practicable, by either ventilating or exhaust devices." While there was evidence tending to show that it was practicable to remove gas from said manhole by ventilating or exhaust devices, and that there were no such devices

there installed, there was no evidence tending to show that there were any fumes or gases arising in the manhole on the morning mentioned, "from any *process,* * * * which is *created* in the course of a *manufacturing* process, *within* such factory, mill or workshop."

It is further contended by counsel for the defendant that the trial court erred in allowing one of plaintiff's expert witnesses, Dr. Leipold, in answer to a hypothetical question, objected to by defendant, to testify practically to the effect that in his opinion plaintiff's unconsciousness at said railroad station was caused by poisoning from illuminating gas. To plaintiff's declaration the defendant pleaded the general issue. At the trial there was no admission of an injury to plaintiff, and defendant denied that plaintiff had inhaled illuminating gas at the manhole. We think that the court erred in allowing the witness to, in effect, give his opinion as to an ultimate fact which was to be determined by the jury from all the evidence. *Schlauder v. Chicago & S. Traction Co.,* 253 Ill. 154, 160; *Keefe v. Armour & Co.,* 258 Ill. 28, 33.

For the reasons indicated the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*